## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |

| | |
|---|---|
| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |

| | | |
|---|---|---|
| Present: The Honorable | James V. Selna | |
| Adrianna Gonzalez | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING Defendant's Motion for Summary Judgment (fld 4-16-12)** [39]

Defendant and counterclaimant State Farm Mutual Automobile Insurance Company ("State Farm") moves the Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all of Plaintiff and counterdefendant Network Signatures, Inc.'s ("NSI") claims and on its declaration of unenforceability counterclaim. NSI opposes. For the following reasons the motion is GRANTED.

I.       PROCEDURAL BACKGROUND

NSI initiated this action on June 30, 2011, alleging that State Farm directly and indirectly infringed U.S. Patent No. 5,511,122 ("the '122 Patent"). (Compl. ¶ 13, Docket No. 1.) NSI possesses an exclusive license for this patent from the patent holder, the United States Government. ( Id. at ¶ 3.) It seeks declaratory, monetary, and injunctive relief. (Id. at p. 6-7.)

State Farm filed its answer, affirmative defenses, and counterclaims on September 13, 2011. (Ans. ¶ 1 et. seq., Docket No. 12.) In its answer State Farm alleged four counterclaims, all under the Declaratory Judgment Act. (Id. at ¶ 58.) The third, titled "Declaratory Judgment of Unenforceability," seeks a declaration that the '122 Patent is unenforceable due to inequitable conduct. (Id. at ¶¶ 73-78.) NSI filed its answer to the counterclaims on November 23, 2011. (Docket No. 29.)

State Farm then filed the present motion for summary judgment. It argues there is no genuine issue of material fact about whether the '122 patent should be held

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |

| | |
|---|---|
| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |

unenforceable due to inequitable conduct.  (Not. of Mot. 1, Docket No. 39.)  Therefore, it should be granted judgment on all of NSI's claims since they are enforcement rights based on the '122 patent and judgment on its counterclaim seeking a declaration of unenforceability bars these claims.  (Id.)  Specifically, State Farm argues that after the '122 patent had expired for failure to pay the 7.5 year maintenance fee within the grace period, the attorney who revived it did so on the basis of a false material statement and omissions to the U.S. Patent and Trademark Office (the "PTO") in order to defraud the PTO and obtain the patent's revival.  (Mot. Br. 1-2, Docket No. 39-1.)  NSI opposes, arguing that the evidence does not show there was an improper revival, let alone inequitable conduct.  (Opp. Br. 1-2.)  Thus, it contends, the motion should be denied. (Id. at 2.)


## II.   LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Summary judgment is to be granted when "with all reasonable factual inferences drawn in favor of the non-movant, it is apparent that only one conclusion as to infringement could be reached by a reasonable jury."  ATD Corp. v. Lydall, Inc., 159 F.3d 534, 540 (Fed. Cir. 1998).  The burden is initially on the moving party to demonstrate an absence of a genuine issue of material fact.  MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1373 (Fed. Cir. 2005).  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact.  Id. If the non-moving party meets this burden, then the motion will be denied.  Bose Corp. v. JBL, Inc., 274 F.3d 1354, 1360 (Fed. Cir. 2001).  The Court will view the evidence in the light most favorable to the non-moving party.  MEMC Elec. Materials, Inc., 420 F.3d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

1373.

## III.   FACTUAL BACKGROUND

The parties have presented evidence, purportedly uncontroverted facts supported by that evidence, and alleged factual disputes presented by the evidence.  To the extent any disputed facts or evidence are material to the Court's decision, the disputes are resolved as stated herein.  Disputes over evidence the Court does not rely on are immaterial, and the Court does not rule on them.  The facts discussed herein are uncontroverted, except as may be noted below.

### A.   Statutory Framework

A brief overview of the statutory framework is helpful in assimilating the detailed facts set forth in this section.  Non-plant, non-design patents issued after December 12, 1980, once granted, remain in force subject to the payment of certain maintenance fees.  37 C.F.R. § 1.362(a).  These fees are due at the 3.5, 7.5, and 11.5 years after grant date points with the fee amount increasing the longer the patent has been in force.  37 C.F.R. § 1.20(e)-(g).  The fee will be accepted by the PTO from six months before and up to the fee due dates discussed.  37 C.F.R. §1.362(d).  The fees will also be accepted if tendered with an additional surcharge and submitted within a six month grace period after the fee due date.  Id. at (e).  If these fees are not paid in either time period, the patent expires.  Id. at (g).

After expiration, the PTO may accept payment of a maintenance fee if a party makes a petition and shows that the delay in paying the fee was unavoidable or unintentional and an additional surcharge is paid.  37 C.F.R. § 1.378(a).  If the PTO accepts the fee, the patent is considered to have not expired.  Id.  To petition for late acceptance of a maintenance fee based on unintentional delay, the petition must be filed within 24 months of the end of the grace period.  Id. at (c).  It must include a statement that the delay was unintentional and be signed.  Id. at (c), (d).

The '122 Patent was issued on April 23, 1996. (SUF ¶ 1.)  Thus, the second maintenance fee could have been tendered without any additional surcharge between April 23, 2003, and October 23, 2003.  The grace period for paying the maintenance fee with a surcharge only expired April 23, 2004.  Without payment by this date, the patent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

would expire subject to possible revival.  The two year period to revive the patent based on unintentional delay expired April 23, 2006.

> B.   The '122 Patent and the Navy Research Laboratory

The '122 Patent was issued naming Randall Atkinson as inventor and the United States of America, as represented by the Secretary of the Navy, as assignee. (Statement of Uncontroverted Facts ("SUF") ¶¶ 1-3, Docket No. 41.)[1]  It was obtained, managed, and maintained by the Naval Research Laboratory ("NRL").  (Beard Decl. Ex. A-1, Docket No. 40-2.)

John Karasek ("Karasek") is an attorney who joined the NRL in 1991 and worked there in different capacities until 2009 when he was promoted to a position for the Office of Naval Research.  (Karasek Decl. ¶¶ 2-6, Docket No. 43-1.)  He continues at that position today.  (Id. at ¶ 6.)  In 2000, Karasek became Associate Counsel, Intellectual Property at NRL where he was responsible for supervising the intellectual property attorneys and support staff at the NRL.  (SUF ¶ 18; Karasek Dep. 19:3-17, Docket No. 40-1.)[2]  He worked in that capacity until July, 2009.  (SUF ¶ 19.)  The group of personnel that Karasek led was responsible for paying maintenance fees for patents amongst other things.  (SUF ¶ 20.)[3]

---

[1]NSI expressly acknowledges many facts proffered by State Farm are uncontroverted.  (See Statement of Genuine Issues ("SGI"), Docket No. 44.)  As to these facts, the Court cites to State Farm's SUF by paragraph number.  More detailed citations to the record are found therein.  Additionally, per Local Rule 56-3, "the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to
the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."

[2]NSI purports to dispute ¶ 18.  (See SGI ¶18.)  However, it disputes the fact by restating it.  (Id.) The fact is uncontroverted.

[3]NSI purports to dispute this fact.  (SGI ¶ 19.)  It claims the cited evidence "says only that a 'group had responsibilities for paying maintenance fees for patents.'" (Id.)  In actuality, the question NSI quotes and that Karasek responded "yes" to, asked "[w]hile you were at, I guess, the associate counsel of IP at NRL, did your group have responsibilities for paying maintenance fees for patents." (Karasek Dep. 25:17-21 (emphasis added).)  Given this and the remaining context of the deposition, it is clear that the group being discussed was the one that Karasek supervised.  The Court finds the fact is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

Jane Kuhl ("Kuhl") was an employee of the NRL from October, 2003 until February, 2006. (Kuhl Dep. 23:10-27:1, Docket No. 40-4.) She was employed in the Technology Transfer Office ("TTO") where she worked as a licensing associate negotiating patent licenses, cooperative research and development agreements, and looking for people interested in NRL technology. (Id. at 23:15-24:7.) She worked as the *de facto* head of the TTO upon starting employment there and later became the official head of the office. (Id. at 25:5-26:2.) She kept notes related to her work at NRL from at least October 21, 2003 until February 15, 2006. (SUF ¶ 24.) In her employment, she interacted with Karasek almost daily. (Statement of Additional Relevant Facts ¶ 146, Docket No. 44.)

Both Karasek and Kuhl were permanent members of an NRL committee known as the invention evaluation board ("IEB"). (SUF ¶¶ 29, 31, 32.)[4] This committee met monthly to discuss what patent applications to file. (SUF ¶ 33; Kuhl Dep. 34:6-10.) Karasek testified and declares that the IEB was also responsible for deciding whether to pay maintenance fees on patents and did so on an annual or semi-annual basis. (Karasek Dep. 28:10-11, 38:7-11; Karasek Decl. ¶ 5.) Kuhl testified that she did not remember exactly whether the IEB was responsible for making these decisions and that she believed such decisions were "handled mainly" by Karasek and his staff. (Kuhl Dep. 35:14-36:11.) Though she states they solicited input from her about current patent licensing or inquiries to assist in making those decisions. (Id. at 36:12-37:15.)

In preparation for deciding what maintenance fees to pay, Karasek's office created a list of patents with fees due 1-2 times per year. (Karasek Dep. 43:1-19; Kuhl Dep. 36:21-37:2.) Input on the patents was then solicited from the TTO and, through it, from the inventors. ( Karasek Dep. 35:11-37:17; 41:6-13.) Karasek testified that the IEB used this list in its process for deciding which patents to pay the maintenance fee for. (Id. at 42:13-46-14.) Karasek often made the written record of these decisions and took any record of these decision to his office to be acted upon. (Id. at 34:3-16; 46:5-14.) This list included a column titled "Pay Fee?" (Id. at 49:16-17; Beard Decl. Ex. B-2.) From that point, staff working for Karasek carried out the decisions by paying fees when that list

_____

uncontroverted.

[4]NSI disputes the implication of using an abbreviation for IEB. (SGI ¶ 29.) The actual fact that a committee was established at the NRL that was known by this name is not disputed. Further, there is evidence NRL employees used this acronym. (Kuhl Dep. 34:13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|----------|--------------------------|------|---------------|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|-------|------------------------------------------------------------------------|

indicated "yes" under that column or not paying them when it indicated no.  (Karasek
Dep. 46:12-47:7; 51:21-52:7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

C.   The 7.5 Year Maintenance Fee

A list of patents including the '122 patent was generated by Karasek's office indicating that its second (the 7.5 year) maintenance fee would be due and a decision on whether to pay it was needed.  (Karasek Dep. 48:10-22; Beard Decl. Ex. B-2.)  The report is dated January 14, 2003, indicating possibly the date the report was generated but not the date of any meeting discussing the list.  (Karasek Dep. 52:20-53:5.)  On that list, Karasek made the notation that the '122 patent maintenance fee was not to be paid, reflecting a deliberate decision by the IEB.  (Id. at 51:3-15; SUF ¶ 43.)  As of April 23, 2004, the last day to pay the fee before the patent expired,  Karasek's office had not paid the maintenance fee on the '122 patent and did not fail to do so as a result of a mistake about whether the fee was due or whether the IEB had decided to pay the fee.  (SUF ¶ 47.)

D.   Commercial Interest and Communications

Commercial interest in a patent is something the IEB considers in making its decision on whether to pay the maintenance fee of a patent.  (Karasek Decl. ¶ 5; Karasek Dep. 35:11-15.)  Commercial interest meant any licensing activity or inquiries.  (Karasek Dep. 63:4-10; Kuhl Dep. 36:13-22.)  There was no commercial interest in the '122 patent until 2004 when Metrix Services, Inc. ("Metrix") expressed interest.  (Beard Decl. Ex. B-9 p. 2, Docket No. 40-13.)  As of September 29, 2004 no other company had ever expressed any interest in the patent.  (Id.)

Hazim Ansari ("Ansari") is an individual who represented Metrix, a predecessor in interest to NSI.  (SUF ¶ 50; Compl. ¶ 9.)  On May 10, 2004, Ansari contacted Kuhl by telephone.  (SUF ¶ 52.)  He expressed interest an exclusive license of the '122 patent on behalf of a company (later revealed to be Metrix).  (Id. at ¶ 53.)  After that call, on May 10, 2004, Kuhl spoke to Karasek about the '122 patent informing him of the licensing inquiry and inquiring about its status.[5]  (SUF ¶¶ 58, 59.)

---

[5]There is some confusion about when Kuhl and Karasek first spoke about the '122 patent. Because the parties appear to agree the revival petition was filed on May 10, 2004, that Kuhl spoke to Ansari for the first time that day, and that Karasek spoke to Kuhl at least once prior to filing the revival petition, the Court finds that this first conversation occurred on May 10, 2004.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |

| | |
|---|---|
| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |

Whether Ansari communicated any further information to Kuhl and whether she in turn relayed that information to Karasek on the May 10 is hotly disputed by the parties. (See SGI ¶ 55; Rep. Br. 11, Docket No. 45.)  State Farm asserts that it is uncontroverted that no further information was known or communicated at that time. (SUF ¶¶ 55, 56, 60.)  In support of its dispute of this fact, NSI cites several groupings of deposition excerpts.  (Id.)  The Court finds the second to be inapposite as it was in response to a question framed about Kuhl's knowledge "as you sit today" and follow up questions in the same context.  (Kuhl Dep. 156:6-157:20.)  The third also does not dispute the fact as represented because it only discusses Kuhl's investigation and a letter sent much later than May 10, 2004.  (Id. at 192:1-195:16.)  Additionally, the Court does not find the purported quotation anywhere in the cited excerpt.  However, the first cited excerpt does create at minimum a genuine issue of fact whether in that first conversation Ansari related to Kuhl that he had previously tried to contact Paul Reagon ("Reagon"), the ill head of the TTO office.  (Id. at 53:7-54:19.)  What it does not create is any controversy over whether Kuhl knew when any such contacts occurred or what they involved.

The further cited excerpts from Karasek's deposition are more specific.  They create a factual dispute about whether Kuhl told Karasek that Ansari had made several previous contacts in the first half of April.  (See Karasek Dep. 127:11-130:6; 176:15-177:5.)

E.     Revival and Subsequent Documentation

On May 10, 2004, Karasek verified that the '122 patent had expired because the maintenance fee was not paid.  (SUF ¶ 69.)  He directed people in his office to research if it would be possible to reinstate the patent.  (Id.)  Karasek received an oral report on this research.  (Id.)  Based solely on his review of the patent file, the information relayed to him by Kuhl, and his legal team's research, Karasek filed a petition for revival on May 10, 2004.  (Karasek Decl. ¶ 17.)  He nor Kuhl attempted to verify Ansari's reported attempts to contact NRL or to determine any more specific information of what those efforts entailed prior to his filing the revival petition.  (SUF ¶¶ 95, 137, 138.)[6]  Despite stating that he has no independent knowledge of the IEB's initial decision to not pay the maintenance fee and the fact the he has testified that other considerations entered such

---

[6]While NSI disputes some of the cited facts, the Court has reviewed the disputes and the evidence and finds the facts as stated by the Court are uncontroverted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

decisions generally, Karasek declares that the NRL would have paid the fee if it knew of Ansari's interest prior to the '122 patent's abandonment. (Karasek Decl. ¶¶ 5, 15; Karasek Dep. 34:17-37.) The petition indicates it is submitting payment of the 7.5 year maintenance fee and a surcharge as a condition for acceptance of an unintentionally delayed payment of the maintenance fee. (Beard Decl. Ex. B-6.) It also includes the statement "[t]he delay in payment of the maintenance fee to this patent was unintentional," and is signed by Karasek. (Id. at 3; SUF ¶ 77.) On May 17, 2004, the PTO mailed Karasek a letter indicating the petition had been granted and the patent was reinstated.

Karasek states now that he concluded on May 10, 2004, that a good faith mistake of fact occurred making the abandonment of the '122 patent unintentional within the meaning of the PTO rules. (Karasek Decl. ¶¶ 17, 19.) This conclusion was purportedly certain enough to conclude that he could unequivocally state on the petition that it was unintentionally abandoned and sign it. (Id. at ¶ 20.) However, it was subsequent to May 10, 2004, on May 11, 2004 or later, that Karasek spoke with Kuhl and stated only that "there's a chance we can get it back" if there was evidence that there was commercial interest in the patent that had been unknown. (SUF ¶ 100.) He told Kuhl that if they could show that there had been commercial interest but they were unaware of it because of Reagon's illness that there is a chance that we can say there was a commercial interest but it just didn't get the attention of our office. (SUF ¶ 101.)

Thus, although the petition had already been filed, as of May 11, 2004 Kuhl believed Karasek needed more information from Ansari before he would be able to file the petition. (Id. at ¶ 105.) She spoke with Ansari on May 20, 2004 and informed him that the patent had been abandoned to which he responded that he would possibly like to take a shot at reviving it and would send a proposal. (Id. at ¶ 109.)[7] Thus, Ansari sent a letter to NRL on May 24, 2004, that states he believed there was "a slim chance the '122 patent could be revived" and offers to take the lead on petitioning for revival. (Id. at ¶¶ 112-15.) Kuhl told Ansari that it was important that they know about his interest in the patent and the dates and times and who he tried to contact prior to May 10th. (SUF ¶ 118.) On June 4, 2004, Ansari sent a letter documenting his specific efforts to contact the NRL prior to May 10, 2004. (Beard Decl. Ex. B-4.) Karasek reviewed this letter. (SUF

---

[7]NSI disputes that the cited record states the asserted fact. (SGI ¶ 109.) The Court has reviewed the cited records and finds they support the fact as the Court states it above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

¶ 128.)  Kuhl sent a response letter to Ansari on June 30, 2004 that was copied to Karasek and included language drafted by Karasek and his office.  (Kuhl Dep. 191:20-192:15.)  The letter indicated that the NRL would be petitioning the PTO for revival and includes the statement "[a]ssuming we are successful in reviving the patent."  (Beard Decl. Ex. B-5.)  On June 30, 2004, Kuhl had a conversation with Karasek where he told her to get information regarding Ansari's attempts to inform the NRL of his interest.  (SUF ¶ 136.)[8]  He also indicated that no declaration from Ansari would be required, only a signed letter or fax.  (SUF ¶ 135.)

The NRL legal department prepared a memorandum to the file later in July, 2004.  (Karasek Decl. ¶ 18; Beard Decl. Ex. B-8.)  In that memo, signed by Karasek, he purports to document the basis for his "finding that NRL's late payment of the second maintenance fee for the subject patent was unintentional."  (Beard Decl. Ex. B-8.)  He notes Ansari's statements to Kuhl about his attempts to contact NRL and his crediting those statements based on Ansari's ethical duty of candor as an officer of the court.  (Id.)  Additionally, he notes that it "is the routine practice at NRL to maintain in force any patent for which there has been a recent expression of interest."  (Id.)  Finally, Karasek relates that he had two attorneys research unintentional failure to pay a fee on time and that based on this research, he concluded there was a mistake of fact that was a sufficient basis for finding the failure to pay was unintentional.  (Id.)  Attached was the June 4, Ansari letter and the research file that Karasek's legal team created.  (Id.)  That research file included excerpts from the MPEP; the case In re Maldague, 10 USPQ2d 1477 (Comm'r of Patents 1989); the case In re Application of G, 11 USPQ2d 1378 (Comm'r of Patents 1989); and the case In re Decision Dated Feb. 18, 1969, 162 USPQ 383 (Comm'r of Patents 1969).

---

[8]NSI argues that this citation does not say Karasek to Kuhl told "get" information.  (SGI ¶ 136.)  However, it is clear that Kuhl states that Karasek told her to "get" a letter that should state all the information.  (Kuhl Dep. 91:13-92:6.)  The Court finds this fact is supported and uncontroverted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 11-00982 JVS (RNBx)                    Date   June 13, 2012

Title       Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co.

IV.   <u>DISCUSSION</u>

The Court first discusses the recently revised legal standard for finding inequitable conduct and holding a patent unenforceable. It then turns to the facts of this case and finds that there is no genuine issue of material fact that there was inequitable conduct. Thus, the Court finds the '122 patent unenforceable.

A.       <u>Inequitable Conduct Generally</u>

An individual practicing before the PTO is under a duty of candor, and breaching that duty in the process of procuring a patent is considered inequitable conduct. <u>LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n</u>, 948 F.2d 1066, 1070 (Fed. Cir. 1992). If proven, inequitable conduct renders a patent unenforceable subject to some analysis of the equities. <u>Therasense, Inc. v. Becton, Dickinson and Co.</u>, 649 F.3d 1276, 1285, 1287 (Fed. Cir. 2011) (*en banc*).

In <u>Therasense</u>, the *en banc* Federal Circuit summarized, revised and clarified the requirements for succeeding on a claim or defense of inequitable conduct: "This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." <u>Id.</u> at 1290. To show inequitable conduct an accused infringer must prove two separate requirements, intent and materiality. <u>Id.</u> The requirements are independent, and district courts are not to use a sliding scale to adjust the required showing for each. <u>Id.</u>

To meet the intent requirement, an accused infringer must show by clear and convincing evidence that the patentee acted with the specific intent to deceive the PTO. <u>Id.</u> at 1290. Indirect and circumstantial evidence can establish intent where a specific intent to deceive is the single most reasonable inference able to be drawn from the evidence. <u>Id.</u> (citing <u>Star</u> 537 F.3d at 1366).

The court went on to hold that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." <u>Id.</u> at 1291. Thus, a court must determine if absent the inequitable conduct "the PTO would have allowed the claim." <u>Id.</u> To make such a determination a court must examine the undisclosed evidence or statements under the standard the PTO would apply. <u>Id.</u> This ensures the doctrine is "only [] applied in instances where the patentee's misconduct resulted in the unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

benefit of receiving an unwarranted claim." Id. at 1292. To this general rule, the court recognized an exception in "cases of affirmative egregious misconduct" that would not require a showing of materiality. Id. This exception meant that for deliberately planned and carefully executed schemes, materiality would be assumed. Id. The submission of an unmistakably false affidavit would be an example of such conduct. Id. at 1293.

      B.    Affirmative Egregious Conduct

     State Farm contends that Karasek's statement that the failure to pay the fee was unintentional is affirmative egregious conduct that establishes materiality regardless of the but-for analysis. (Rep. Br. 4.) The Court first addresses this exception.

     The exception is essentially a retention of the unclean hands defense that spawned the inequitable conduct doctrine. Human Genome Sciences., Inc. v. Genentech, Inc., 2011 U.S. Dist. LEXIS 153834 at *25 (C.D. Cal. Dec. 9, 2011). In the cases underlying this exception, the guilty patentees discovered or caused misrepresentations and then took affirmative steps to prevent the PTO from ever discovering the misrepresentation. Id. at *25-26 ("The bad conduct included paying witnesses to lie, publishing false articles under the names of industry experts, and engaging in a settlement with a known perjurer in a manner which suppressed the evidence of the perjury.") (citing Therasense, 649 F.3d at 1285). Therasense explicitly recognized that submission of an unmistakably false affidavit would meet this test. Therasense, 649 F.3d at 1293.

     State Farm argues that Karasek's statement on the revival petition meets this requirement because it is an unmistakably false affidavit. (Rep. Br. 4.) NSI contends that this statement is and was not false based on the law. (Opp. Br. 12.)

     The Court has found that the facts, viewed in a light most favorable to NSI, support the conclusion that at the time Karasek made this statement he had been told by Kuhl in general terms of previous attempts by Ansari to contact the NRL in the early weeks of April. This would have put the contacts prior to the close of the six month grace period to pay the maintenance fee with an additional surcharge. 37 C.F.R. § 1.378(e). The Court considers whether the law, at the time the petition was filed, would support Karasek making a statement that the NRL's abandonment was "unintentional" based only on these general facts relayed to him, or if, in light of his knowledge that the IEB had made a deliberate decision to abandon the '122 patent, this statement was unmistakably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

false.

The PTO:

> may accept the payment of any maintenance fee due on a patent after
> expiration of the patent if, upon petition, the delay in payment of the
> maintenance fee is shown to the satisfaction of the Director to have
> been . . . unintentional (paragraph (c) of this section) and if the
> surcharge required by § 1.20(I) is paid as a condition of accepting
> payment of the maintenance fee

37 C.F.R. § 1.378(a). Such a petition must include "a statement that the delay in
payment of the maintenance fee was unintentional." 37 C.F.R. § 1.378(c)(3). The
PTO will generally credit such a statement based on the duty of candor owed it and
grant the petition. MPEP §§ 2590(II), 711.03(c); (USPTO Consolidated Notice:
Clarifications of Application Revival Procedures (37 C.F.R. 1.1.37) provided by
Supp. Afrasasiabi.Decl. Ex. A, Docket No. 47).

NSI points to In re Maldague, for the proposition that a mistake in fact may
form the basis for a holding of unintentional abandonment under 37 C.F.R.
1.137(a). (Opp Br. 12 (citing 10 USPQ2d at 1478).) It also points to a more recent
case, Goss Int'l Americas, Inc. v. Mann Roland, Inc., 2006 WL 2241554 (D.N.H.
July 31, 2006), but this case could not establish the truth or falsity of Karasek's
statement when it was made. (Opp Br. 12.) Finally, it relies on In re Application
of G, 11 USPQ2d at 1380, to also support its position. These two cases, contained
in the research file associated with the memo regarding revival of this patent, stand
for the proposition that re-evaluation of a decision based on the same facts is
insufficient to claim the original decision was unintentional. Maldague, 10
USPQ2d at 1478; Application of G, 11 USPQ2d at 1380. They distinguish a
mistake of judgment from a mistake of fact. Id. They did not deal with the facts
Karasek was presented. Thus, Karasek was confronted with no clear answer
justifying his statement. He was only presented with a possible implication that if
he had specific facts of prior expressed commercial interest it could be sufficient
grounds to state that the delay was unintentional. At the time he had only
generalized second-hand statements of prior expressions of interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |

| | |
|---|---|
| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |

While a close issue, the Court cannot conclude that Karasek's statement rises to the level of affirmative egregiousness of the cases <u>Therasense</u> references.  There is insufficient evidence of subsequent steps taken to continue deceiving the PTO or activities rising to the level of paying witnesses to lie or creating false articles with deceptive attribution to make such a finding.  <u>Therasense</u>, 649 F.3d at 1285-86 Notwithstanding this conclusion, the Court finds that inequitable conduct is established under the normal test for materiality and intent to deceive.

C.     <u>But For Materiality</u>

The conduct that State Farm points to as the basis for its claim and defense of inequitable conduct is Karasek's failure to disclose the NRL's deliberate decision to abandon the patent, what its motivation to revive was, and his lack of knowledge or evidence of what Ansari's previous efforts were at the time of filing the petition.  (Rep Br. 8.)  The Court concludes that Karasek's failure to disclose his basis for stating that the delay in paying the fee was unintentional is but-for material.  The PTO would not have revived the patent if it had been presented his limited factual basis and reasoning.

In addition to the cases discussed above, the Court also looks to subsequent cases to determine how the PTO would have decided this issue if presented to it fully rather than being presented only Karasek's unqualified statement.  Additionally, the Court notes that the Federal Circuit has stated that "[c]lose cases should be resolved by disclosure, not unilaterally by the applicant."  <u>LaBounty</u>, 958 F.2d at 1076.[9]

In <u>In re Patent of: Carlson et al.</u>, the commissioner of patents rejected a revival petition that was based on the petitioner's discovery of certain information

---

[9]At oral argument, NSI asserted that <u>LaBounty</u> has less import in the present case because it was deciding disclosure in the context of seeking a patent grant, not a revival of an already granted patent which is remedial.  The Court finds no grounds to make this distinction, especially in light of the MPEP pointing to the unintentional delay standard used for patent application revival, a situation prior to the grant of a patent, to govern revival here.  MPEP § 2590 (II) (citing MPEP § 711.03(c) (referencing a party's 37 C.F.R. § 10.18 obligations when making a statement of unintentionality)).  Further, NSI extensively relies on cases and statutes dealing with application revival.  (<u>See</u> <u>e.g.</u> Supp. Afrasiabi Decl. Ex. A.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |

| | |
|---|---|
| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |

subsequent to the patent expiration date. 2003 WL 25523657 at *6 (Comm'r of Patents, Jan. 24, 2003). Specifically, the petitioner learned that a competitor was offering a product similar to that disclosed in the patent. Id. at *3. He then re-evaluated his decision and filed the petition, notably with a declaration detailing extensively his basis for claiming the delay was unintentional.[10] Id. at *1, *3. The petition was rejected. The commissioner concluded that subsequently learning of information that caused one to re-evaluate the commercial value of a patent was a changed circumstance and not a mistake of fact. Id. at 6. It stated that "when the maintenance fee fell due, Mr. Welsch did not intend to make the payment, or cause the payment to be made. As such, the delay resulting from this deliberate action (or inaction) of Mr. Welsch cannot reasonably be regarded as 'unintentional.'" Id. at *6. The record established that when the fee was due, there was a deliberate decision that there was no compelling reason to continue the patent in force. Id. Thus, the "[p]etitioner overlook[ed] that salient fact that the entire delay resulting from the decision of Mr. Welsch, as it results from a conscious and deliberate decision, cannot now be regarded as unintentional." Id.

NSI argues that the Carlson decision is inapplicable because it is another instance of reviewing the same facts a second time and changing one's mind. (Opp. Br. 14.) As discussed above, this is only part of the story since the petitioner also presented evidence of new information he learned after the patent expired but that was unbeknownst to him at the time of the decision (a competitor was offering a product covered by the patent). Carlson, 2003 WL 25523657 at *6. Thus, NSI's distinction is unconvincing and the Court finds this case to be most on point.

At oral argument, NSI argued that there were additional distinctions. It argued that in Carlson, the court did not state that the competitor was offering the product at the time Welsch made his decision; it only stated that Welsch learned of this knowledge after the patent expired. Thus, it is possible that the product was not offered until after the patent expired, rendering the case distinguishable. NSI also argued that the case was distinguishable because patent holders have a legal duty to investigate and discover possible infringers while NRL had no legal duty to know when anyone tried to contact it. Based on the explicit language of the

---

[10]In both Maldague and Application of G, the petitioners also filed evidence to support their statements that the delay was unintentional. 10 USPQ2d at 1478; 11 USPQ2d at 1379.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |

| | |
|---|---|
| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |

decision quoted in the previous paragraph and the statement that what the petitioner "would have wished or intended had Mr. Welsch been aware of the commercial importance of the subject patent [is] immaterial," the Court finds the case is still persuasive. Id. This conclusion is also bolstered by the type of mistake of fact taught by the Goss case discussed below. When the fee was due, Karasek and his office carried out the deliberate decision to abandon without mistake about what the decision was or when action was required.

NSI argues that ignorance of a material fact is enough to create a mistake of fact under Goss. (Opp. Br. 15.) In Goss, the court found that there was a mistake of fact sufficient to justify stating that a delay was unintentional. 2006 WL 2251554 at *4-5. It found that the petitioner mistakenly believed it was maintaining its claim to the same patentable subject matter through another application. Id. at *4 ("[T]he only contemporaneous explanatory writings on the matter . . . indicate that while the '587 *application* was to be abandoned, its *subject matter* was not."). The Court finds this case does not apply here. There is no dispute that NRL via the IEB deliberately decided to abandon the subject matter of the '122 patent. There was no confusion in making that decision.

Karasek omitted any evidence or explanation beyond the simple statement that the delay was unintentional. At that time he had only generalized second-hand knowledge that previous attempts to communicate interest had been made. He did not have specific facts or documented evidence of what specific mistake of fact he was basing the petition on. The Court finds that if he had submitted a statement explaining what he knew and reasoned at that time, the PTO would have requested more specific facts than what Karasek then had and denied the petition if such facts were not given. Additionally, it would have denied the petition even with the facts as later documented. Accordingly, the Court finds that omitting any evidence or explanation of why the delay was considered unintentional was but-for material.

D.     Intent to Deceive

To meet this requirement, a patentee must misrepresent or omit material information with the specific intent to deceive the PTO. Therasense, 649 F.3d at 1287. Materiality combined only with the fact that the withholder "should have known" of that materiality is insufficient to prove intent. Therasense, Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

Becton, Dickinson and Co., Slip Copy, 2012 WL 1038715 At *8 (N.D. Cal. Mar. 27, 2012) (remand decision from Therasense, 649 F.3d 1276) (hereinafter Therasense (remand)).  Such intent may be established by showing by clear and convincing evidence that the alleged deceiver: (i) had actual knowledge of the withheld information; (ii) had actual knowledge of its materiality; and (iii) made a deliberate decision to withhold the information.  American Calcar, Inc. v. American Honda Motor Co., Inc., 651 F.3d 1318, 1335 (Fed. Cir. 2011); Therasense (remand), 2012 WL 1038715 at *9.

  1.     Knowledge of Withheld Information

     When he filed the petition for revival, Karasek knew that the '122 patent had been abandoned as a result of a deliberate decision of the IEB and that his office did not make any logistical mistakes in carrying out that decision.  Section III. C. supra p. 6.  He knew that at that time his petition was based only on general knowledge of Ansari's attempts to contact NRL in early April, 2004.  Section III. D. supra p. 7.  Karasek also knew that considering the facts and the law as he researched it and if presented fully to the PTO, it was a close issue of whether it would be considered an unintentional delay.  Section III. D. supra p. 7.  Finally, Karasek knew that per 37 C.F.R. § 11.18 (previously § 10.18), he had to have an existing evidentiary basis or state that one would be forthcoming with further investigation.  (Karasek Decl. ¶ 20.)  By signing the petition, he certified that his statement was made on information and belief, that to the best of his knowledge that information and belief were formed after an inquiry reasonable under the circumstances, and that any factual contentions had evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation.  37 C.F.R. § 11.18 (b).

  2.     Knowledge of Materiality

     The Court concludes that Karasek knew that this information was material to the PTO's decision.  He recognized he needed more specific information about Ansari's attempts to contact NRL beyond what he had upon making the petition.  Section III. E. supra p. 7-8. He recognized there was only a chance on the facts as documented further, that the PTO would revive.  He also requested further documentation of Ansari's attempts to contact the NRL had been, showing that this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

evidence was important to any decision that a mistake of fact occurred. <u>Id.</u> Karasek recognized that it was not a sure thing that the PTO would grant the revival and that gathering such evidence could assist him. <u>Id.</u> He also knew that the unadorned statement of unintentionality would normally be accepted on his duty of candor. The Court concludes Karasek knew such facts would be important to a PTO decision and disclosure of the facts would affect the outcome.

3.     Deliberate Decision to Withhold the Information

Karasek failed to present the facts underlying his statement that the delay was unintentional. He does not contend that this failure was due to inadvertence or mistake and the evidence shows this was a deliberate decision. (Karasek Decl. ¶ 21.) This in and of itself would be sufficient for this specific element. <u>Therasense</u> (remand), 2012 WL 1038715 at * 10.[11] The research file is also telling. Karasek was presented with and apparently relied on the <u>Maldague</u>, and <u>Application of G</u> cases, which showed petitioners submitted declarations or statements in support of their petition routinely. 10 USPQ2d at 1478; 11 USPQ2d at 1379. Further, the file contained the MPEP procedure excerpt that discusses that applicants can "choose[] to include a statement of facts concerning the delay." (Beard Decl. Ex. B-8.) While NSI now argues that the statutory scheme implied that submissions would not be accepted or required for a § 1.378(b) petition regardless of whether there was only a chance of success if the facts were known, the resources Karasek was then confronted with taught differently. Further, the statutory scheme may not specify that the factual basis must be provided beyond the simple statement that the entire delay was unintentional, but the MPEP clearly states that statement is governed by 37 C.F.R. § 11.18. MPEP 2590 (II). Thus, he was required to

---

[11]At oral argument, NSI took issue with the Court's conclusion in this paragraph as contrary to <u>AstraZeneca Pharmaceuticals LP v. Teva Pharmaceuticals USA, Inc.</u>, 583 F.3d 766, 777 (Fed. Cir. 2009). It argued that this case and <u>Therasense</u> after it dictate that intent to withhold is not enough. What NSI fails to account for is that <u>AstraZeneca</u> holds that intent to withhold is insufficient as a sole grounds to find the specific intent element. <u>Id.</u> It has no holding on the framework provided here or whether intent to withhold is insufficient to meet this third element. <u>Id.</u> Noticeably, in <u>AstraZeneca</u>, the court found that specific intent to deceive could not be found with only an intent to withhold when the withheld information <u>was not material</u> and there was no finding the patentee knew it was material. <u>Id.</u> at 775-77. Thus, these line of case law has no bearing on this individual element and support the Court's overall analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

undertake a reasonable investigation or explicitly state that if one was performed, sufficient facts would be revealed. 37 C.F.R. § 11.18(c). Regardless, the Court concludes the decision to withhold was deliberate.

        4.      Specific Intent Summation

By showing these three elements are met beyond a genuine issue of material fact, State Farm has presented sufficient evidence of a specific intent to deceive. American Calcar, 651 F.3d at 1335; Therasense (remand), 2012 WL 1038715 at *9. Karasek's declaration does not refute this finding. He claims only that he "signed and filed the petition after securing the information from Ms. Kuhl about Mr. Ansari's prior efforts to contact the NRL." (Karasek Decl. ¶ 23.) This does not contradict the underlying facts that he had only generalized knowledge, and indeed the Court relied in part on his declaration in determining the uncontroverted facts.

The specific intent conclusion is also supported by Karasek's continued concealment of the fact he had already petitioned for revival and revived the patent when discussing the matter with Kuhl, reviewing the correspondence between her and Ansari, and advising what language should go into Kuhl's letters that state revival is possible but not guaranteed. Section III. E. 8-9. Such behavior shows at least some inkling that the process had not been properly executed and further steps were needed to actually substantiate the incorrect mistake of fact theory. This would be more than sufficient to require an explicit statement about future investigation under 37 C.F.R. § 11.18(b)(2). The Court concludes that State Farm has presented sufficient evidence to show that the only reasonable inference from the uncontroverted facts is that Karasek had a specific intent to deceive the PTO.

        E.      Inequitable Conduct Finding

Because the Court has found that there is no genuine issue of fact that Karasek withheld material information from the PTO with the specific intent to deceive it, it finds there was inequitable conduct associated with the '122 patent. Accordingly, the Court declares the patent unenforceable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00982 JVS (RNBx) | Date | June 13, 2012 |
|---|---|---|---|

| Title | Network Signatures, Inc. v. State Farm Mutual Automobile Insurance Co. |
|---|---|

V.    <u>CONCLUSION</u>

For the foregoing reasons, the motion is GRANTED.  State Farm is granted summary judgment on NSI's claims against it for direct and indirect infringement and is granted summary judgment on its claim for declaratory relief of unenforceability.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | ag | | |